IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CRAIG CHARLES, #N-63233,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-0035-MJR |
| ) | |
| **SALVADOR GODINEZ,** ) | |
| **THOMAS SPILLER, OFFICER SHRILEY,** ) | |
| **OFFICER SHELBY, OFFICER ESTES,** ) | |
| **JOHN NEEDHAM, and** ) | |
| **UNKNOWN PARTIES,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief Judge:**

Plaintiff Craig Charles, an inmate currently incarcerated at Dixon Correctional Center, brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The complaint arises out of events that occurred in 2014 while Plaintiff was an inmate at Pinckneyville Correctional Center ("Pinckneyville").

**Merits Review Under 28 U.S.C. § 1915A**

The complaint is before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After carefully considering the allegations, the Court finds that Plaintiff's complaint survives preliminary review under § 1915A.

## The Complaint

The events giving rise to Plaintiff's claims occurred in January and March 2014 while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). In late January 2014, an inmate on Plaintiff's housing unit assaulted a correctional officer. (Doc. 1, p. 4). Following the incident, the inmate who committed the assault was transferred. Nonetheless, Plaintiff's housing unit was placed on lockdown for several days. *Id*. at 5. Nearly a week after the incident, Plaintiff was awoken at 6 a.m. by Defendants Shriley and Shelby, two members of the Orange Crush tactical team, who ordered him and his cellmate to "get buttass nake[d]." *Id*.

After stripping down and complying, under the threat of a beating, with orders and a visual search, Plaintiff was ordered out of his cell. *Id*. Plaintiff was then ordered to place his hands, palms facing outward, behind his back and handcuffs were tightly placed around his wrists. *Id*. When Plaintiff complained that the handcuffs were too tight, Defendant Shriley slammed Plaintiff headfirst into the wall and said, "Shut the fuck up with the complaining for I give you something to complain about. . ." *Id*. at 6.

Plaintiff was then ordered to keep his head down, bend over 90 degrees, not look up for any reason, and "stay tight" when he walked. *Id*. Because of a pre-existing back injury, Plaintiff was not able to bend over 90 degrees. Defendant Estes, another member of the Orange Crush team, forcefully pushed Plaintiff's back down into the 90 degree position and stated, "Now look down before I [break] your fuckin' neck!" *Id*. Plaintiff managed to get the attention of Defendant Spiller, the warden, who was in the vicinity and informed him about his back issues. Spiller responded, "How the fuck you think my officer felt when ya'll assaulted him, shut up cry baby." *Id*. Spiller then ordered the officers to "take these bitches to the gym." *Id*.

As soon as Plaintiff began walking in the 90 degree position to the gym, he felt "excruciating pain" in his back and a sudden "pop" that caused him to rise up out of the 90 degree position. As soon as he did, Defendants Shriley, Estes, and Shelby began to assault Plaintiff with their batons. *Id*. Plaintiff fell to the ground, but the beating continued for several minutes. *Id*. at 7. Plaintiff cried out in pain and asked for help from the other officers in the area, including Warden Spiller, but his requests for help were ignored. *Id*. Once the beating stopped, Plaintiff was dragged several hundred feet to the gym. *Id*.

Upon arriving at the gym, Plaintiff requested medical attention, but unidentified Defendants refused to allow Plaintiff to see any of the nurses who were already present in the

gym. *Id*. Plaintiff was forced to stand with his head pressed against the wall for several hours in severe pain. *Id*. at 7-8. Plaintiff was then ordered to walk back to his cell, again in the 90 degree position. When Plaintiff attempted to inform officers of the pain he experienced when walking in that position, they threatened him with violence if he did not comply. *Id*. at 8.

Once Plaintiff arrived back at his cell, he again requested and was denied medical attention. *Id*. An unidentified officer shoved Plaintiff back into his cell and said, "Fuck him." *Id*. Plaintiff's housing unit remained on lockdown status for another week. During that time, Plaintiff submitted sick-call requests and asked all of the shift officers for help with getting medical attention, but all of his requests were ignored. *Id*. Once the lockdown ended, Plaintiff was seen by a doctor who prescribed pain medication for his injuries. *Id*. at 9.

Just over a month later, following an inmate assault of a correctional officer, Plaintiff's entire housing unit was placed on lockdown. *Id*. On March 10, 2014, members of the Orange Crush unit entered Plaintiff's wing and began beating on the doors, tables, and rails with their batons. *Id*. Defendant Spiller was present and yelled, "We come to kick some ass, you bitches get up! I told ya'll if you fuck with my officers I would come and kick some ass." *Id*. The officers then ordered all of the inmates out of their cells. After Plaintiff identified himself to Defendants Shriley, Spiller, and other unknown officers, Defendant Shriley grabbed Plaintiff and dragged him to the dayroom. *Id*. at 10. In the dayroom, Defendant Spiller said, "I hear you want to know the identities of those who beat you up, well here we are." *Id*. Defendant Shriley and the unknown officer then began to assault Plaintiff. *Id*. The assault went on for several minutes.

Plaintiff was then handcuffed and forced to walk in the 90 degree position to the gym. *Id*. Again, Plaintiff was forced to stand against the wall for hours and refused medical attention. *Id*.

Plaintiff states that as a result of the injuries he suffered during the assaults on January 30 and March 10, 2014, he has nerve damage to his right side, damage to his right rotator cuff, and increased damage to his lower back. *Id*. Plaintiff further states that Defendants actions made him afraid to lodge any complaints about his property that had been taken during each incident. *Id*. After the March 10 incident, Defendant Needham stated, "You lucky I did not take all your shit for running your [damn] mouth, next time I will." *Id*. at 11.

Plaintiff is seeking monetary damages against Salvador Godinez (director of the Illinois Department of Corrections), Thomas Spiller (warden at Pinckneyville), Officer Shriley, Officer, Officer Shelby, Officer Estes, Officer John Needham, John Doe Tactical Team Leader, and John Doe Officers 1-4.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:     Use of Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*,

559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir.2004).  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim; at the same time, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

The complaint states an actionable excessive force claim against Defendants Spiller, Godinez, Shriley, Shelby, Estes, and other unidentified officers.  Plaintiff claims that Defendants Shriley, Shelby, Estes, and other unidentified officers used excessive force against him during the assaults that took place on January 30 and March 10, 2014.  The degree of force used and the reason for its use are factual determinations that cannot be resolved at the pleadings stage.  Thus, Plaintiff may proceed on his excessive force claim against Defendants Shriley, Shelby, Estes, and other unidentified officers.  However, as to the unidentified officers:  these officers must be identified with particularity before service of the complaint can occur on them. Where a prisoner's complaint states specific allegations describing the conduct of unknown prison officials sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir.2009).  In this case, guidelines for discovery aimed at identifying the unknown parties will be set by the magistrate judge. Once the unknown parties are identified, Plaintiff shall file a motion to substitute the

named individuals in their place.

In addition, Plaintiff alleges that Defendants Godinez and Spiller are liable for the excessive force that was used on two grounds. First, Plaintiff asserts that Godinez and Spiller (director of the Illinois Department of Corrections and warden at Pinckenyville at the time of the incidents, respectively) are liable because they failed to train, monitor, supervise, investigate, and discipline officers about the proper use of force. Plaintiff's attempt to hold Defendants Godinez and Spiller liable on this ground fails. As the Seventh Circuit has noted, "failure to train claims are usually maintained against municipalities, not against individuals and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Brown v. Budz,* 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001).

However, Plaintiff also suggests that Defendants Godinez and Spiller are liable on alternative grounds, in that they *condoned* the use of force. Although the doctrine of respondeat superior does not apply to § 1983 actions, *see Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)), where a defendant, as in this case, has been alleged to have *condoned* the conduct which caused the constitutional violation, that defendant may have sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *See Sanville*, 266 F.3d at 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")). Accordingly, on this basis, Plaintiff may proceed on his excessive force claim against Defendants Spiller and Godinez.

**Count 2:** **Failure to Intervene**

Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994). An inmate asserting a failure to intervene claim under § 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer, must show that the officers had reason to know that excessive force was being used, and the officers had a "realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison,* 324 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir.1994)).

Plaintiff claims that Defendant Spiller and unknown supervisors and superiors violated his constitutional rights because they were present and observed the use of excessive force on Plaintiff, but failed to intervene. Accepting Plaintiff's allegations as true, as the Court must do at this stage, the Court finds that Plaintiff has stated an actionable failure to intervene claim against Defendant Spiller and possibly other unidentified officers. As noted above, these individuals must be identified with particularity before service of the complaint can occur on them.

Plaintiff further asserts that Defendant Godinez, who was not present during the assaults on January 30 and March 10, is liable on this failure to intervene claim because he failed to train, monitor, supervise, investigate, and discipline members of the Illinois Department of Corrections tactical team. This line of argument fails for the reasons discussed above under Count 1. Plaintiff may not proceed on Count 2 against Defendant Godinez.

**Count 3:** **Retaliation**

To state a retaliation claim, an inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The

plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about unconstitutional conduct or conditions), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

Plaintiff does not explicitly list retaliation as a claim, but his allegations suggest that he may have a claim of retaliation against several Defendants. The law does not demand the identification of legal theories in a complaint, and particularly in the case of a *pro se* complaint, leniency should be afforded. *See Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("Instead, we should ask whether any set of facts consistent with the complaint would give him a right to recover . . ."). The complaint sets forth a chronology of facts from which one could plausibly infer that Defendants Shriley, Shelby, Estes, Needham, and Spiller took retaliatory action against Plaintiff when he exercised his right to complain about their unconstitutional conduct. Plaintiff may, therefore, proceed on a retaliation claim under Count 3 against Defendants Shriley, Shelby, Estes, Needham, and Spiller.

**Count 4:   Denial of Medical Care**

To plead an Eighth Amendment medical needs claim, a complaint must allege two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *See Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir.2006); *see also Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011). The Seventh Circuit has held that a medical need is

objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).  To establish that an official acted with deliberate indifference, a plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Specifically, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'"  *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Plaintiff alleges that he was severely assaulted on January 30 and March 10, 2014, by several Defendants.  The assaults left him with injuries that continue to cause him pain and suffering to this day.  Yet, he was refused medical attention following each assault. These allegations support an Eighth Amendment medical care claim against Defendants Shriley, Shelby, Estes, Needham, Spiller, and other unknown officers who witnessed Plaintiff's injuries following each incident, but refused to obtain medical treatment for Plaintiff. Again, as noted above, Plaintiff must identify the names of unknown correctional officers before service of the complaint can occur on them.

**Supplemental State Law Claims**

In addition to Counts 1-4 discussed above, Plaintiff asserts an Illinois state law claim. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  "A loose

factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's state law claim, intentional infliction of emotional distress, arises out of the same events that gave rise to his federal claim. As such, the Court will exercise supplemental jurisdiction over this additional state law claim. Plaintiff may proceed against Defendants Spiller, Shriley, Shelby, Estes, and Needham on his Illinois state law intentional infliction of emotional distress claim **(Count 5)**.

### Pending Motions

Plaintiff's motion for service of process at government expense (Doc. 3) is hereby **GRANTED**. Service shall be ordered on Defendants as specified below.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed on the following claims: **COUNT 1** (excessive force claim) against Defendants **SPILLER, GODINEZ, SHRILEY, SHELBY, ESTES**, and **OTHER UNKNOWN OFFICERS**; **COUNT 2** (failure to intervene claim) against Defendants **SPILLER** and **OTHER UNKNOWN OFFICERS**; **COUNT 3** (retaliation claim) against Defendants **SHRILEY, SHELBY, ESTES, NEEDHAM,** and **SPILLER**; **COUNT 4** (denial of medical care claim) against Defendants **SHRILEY, SHELBY, ESTES, NEEDHAM, SPILLER,** and **OTHER UNKNOWN OFFICERS**; and **COUNT 5** (intentional infliction of emotional distress) against Defendants **SHRILEY, SHELBY, ESTES, NEEDHAM, SPILLER,** and **OTHER UNKNOWN OFFICERS**.

**IT IS FURTHER ORDERED** that **COUNT 2** (failure to intervene claim) is **DISMISSED** without prejudice against Defendant **GODINEZ.**

The Clerk of Court shall prepare for Defendants **SPILLER, GODINEZ, SHRILEY,**

**SHELBY, ESTES,** and **NEEDHAM**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the remaining Unknown Officers until such time as Plaintiff has identified these individuals by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to

include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 8, 2016**

                                        **s/MICHAEL J. REAGAN**
                                        **Chief Judge,**
                                        **United States District Court**

Case 3:16-cv-00035-MJR-SCW   Document 5   Filed 02/09/16   Page 14 of 14   Page ID #50